UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEVEN MAURO and MMM FOREX INC.,

      Plaintiffs,

v.                               Case No.  6:12-cv-1333-ORL-22TBS

ZEN J. ALLDREDGE and KANIN
ALLDREDGE,

      Defendants.

_____/

<u>ORDER</u>

This case comes before the Court without a hearing on Defendants/Counter-Plaintiffs' Motion to Compel Response to Request for Production of Documents (Doc. 32), and Plaintiffs' Motion for Protective Order of Plaintiffs/Counter-Defendants Steven Mauro and MMM Forex, Inc. (Doc. 39).

I.  Background

The parties have asserted claims and counterclaims for misappropriation, conversion, unjust enrichment, theft, unauthorized use of copyrighted materials, copyright infringement, violation of the Lanham Act, 15 U.S.C. § 1125(d), breach of contract, breach of fiduciary duty, tortious interference, and civil conspiracy.  (Docs. 1, 22.)

The Court designated this a Track Two case and directed the parties to comply with Local Rule 3.05.  (Doc. 2, p. 2.)  Following standard Tract Two case procedures, counsel were ordered to meet within sixty days after service of Plaintiffs' complaint to prepare and file a Case Management Report using the district judge's form.  (<u>Id</u>., 2-3.)

On March 27, 2013, Defendants propounded their First Request for Production of Documents (the "Request to Produce") to Plaintiffs.  (Doc. 32-1.)

On April 12, 2013, counsel met in-person to complete their Case Management Report ("CMR").  In the CMR, they agreed as follows: "The parties agree to execute a separate Confidentiality Agreement, as well as complying with the above terms." (emphasis in original).  (Doc. 25, p. 3.)  On the day counsel met to prepare the CMR, the attorney representing the Defendants emailed a proposed confidentiality agreement to one of Plaintiffs' lawyers.  (Doc. 36-2, p. 5.)  Later that day, Defendants' attorney sent this email to Plaintiffs' counsel: "No need to file the Confidentiality Agreement.  We need to finalize among ourselves and put the names in it.  We can finalize that before the first discovery is exchanged."  (Id., p. 3.)

On May 23, 2013, Plaintiffs' attorneys informed Defendants' lawyer that: "We are fine with the Confidentiality Agreement you sent.  Please let us know if you would like us to revise appropriately on our end (inserting names, etc.), or if you will do and send us a finalized version to execute."  (Id., p. 4.)  The Defendants' lawyer replied: "You can finalize and send your signed copy over."  (Id.)

Plaintiffs did not respond to the Request to Produce.  Defendants' lawyer inquired and was told that Plaintiff's counsel never received the request.  (Doc. 32, p. 1.)  The Defendants' lawyer agreed to resend the Request to Produce and that Plaintiffs would have an additional thirty days (through May 31, 2013), to respond. (Id., p. 2.)

On May 31, 2013, Plaintiffs delivered the signed confidentiality agreement and their response to the Request to Produce to Defendants' lawyer.  In their response, Plaintiff's objected to every category of documents Defendants had requested.  (Doc. 32-2.)  Despite their objections, one of Plaintiffs' lawyers told the Defendants' attorney she was "working on getting documents together to be produced."  (Doc. 36-3, p. 5.)

Plaintiffs prefaced their responses to Defendants' individual requests for production with a dozen "General Objections" including privilege, overbreadth, undue burden and ambiguity.  (Id., p. 1-4.)  Then Plaintiffs made the following statement in response to each request with the exception of number 19:

> Objection.  Plaintiffs incorporate herein the general objections stated above as if fully restated herein.  Further, Plaintiffs object to this request to the extent that it is unduly burdensome, to the extent that these documents are equally available to the Defendants in this matter.  Notwithstanding these objections, to the extent that Plaintiffs, after a reasonable search of documents kept in the ordinary course of business, identifies any non-objectionable, non-privileged documents responsive to this request, these documents will be produced to the Defendants on a rolling basis.

(Id., p. 4-13.)

Request 19 asked Plaintiffs to produce: "The confidential information acquired by Mauro as referenced in Paragraph 55 of the Complaint."  (Id., p. 9.)  Paragraph 55 alleges:

> As set forth above, Zen Alldredge breached this duty by diverting MMfx funds to his personal account, by misrepresenting himself as a partner on MMfx's applications to merchants Power Pay and Authorize.net, by using confidential information acquired during the course of his employment to create his own competing (albeit copyright-infringing) business.

(Doc. 1, ¶ 55.)

Plaintiffs responded to request number 19 as follows:

> Objection.  Plaintiffs incorporate herein the general objections
> stated above as if fully restated herein.  Further, Plaintiffs object to
> this request on the basis that it misrepresents Paragraph 55 of the
> Complaint.

(Id., p. 9.)  Presumably, Plaintiffs' objection has to do with Defendants' use of the

name "Mauro," rather than "Zen Alldredge."

Despite their objections, on June 7, 2013, one of Plaintiffs' attorneys sent an

email to Defendants' lawyer stating that she had received two CD's of discovery which

she intended to hand deliver.  She said she would also be delivering a courtesy copy

of Plaintiffs' first discovery requests and: "If possible, I'd like to pick-up a copy of the

signed confidentiality agreement from your office while I'm there."  (Id., p. 11.)

Defendants' lawyer responded: "I'm out today.  You can hold the CD until I deliver the

agreement." (Id.)  Plaintiffs went ahead and delivered a CD containing discovery to

Defendants' lawyer even though Plaintiffs had not received the executed

confidentiality agreement back from Defendants.

Defendants' lawyer attempted, unsuccessfully, to access the discovery on the

CD.  On June 14, 2013, one of Plaintiffs' attorneys emailed him instructions on how to

extract the information and concluded her message with a request for the status of the

confidentiality agreement.  (Doc. 36-4, p. 3-4.)  Defendants' lawyer responded that he

still could not open the CD; his clients would not sign the confidentiality agreement;

Plaintiffs' response to the Request to Produce was unacceptable; and Defendants

would raise these issues in court.  (Id., p. 3.)

Once Defendants' lawyer succeeded in accessing the information on the CD he

discovered that the documents were not categorized by request and that Plaintiffs had only produced documents he already had.  (Id., p. 2.)  He complained and Plaintiffs responded that they have additional documents to produce which they have marked confidential based upon Defendants' representation that they would be proceeding under a confidentiality agreement.  (Id., p. 1.)  Plaintiffs said the confidentiality issue would have to be resolved before they proceeded.  (Id.)  Defendants' lawyer replied: "The confidentiality agreement issue will not be resolved.  My client will not sign it.  There will be no confidentiality agreement in this case."  (Id.)

On June 24, 2013, Defendants filed their motion to compel responses to the Request to Produce.  (Doc. 32.)  Plaintiffs have responded and represented that they have prepared supplemental responses which identify by Bates number the documents responsive to each request but that the supplemental responses will be useless to Defendants until the issue of confidentiality is resolved because the documents are confidential.  (Doc. 36.)  They also characterize Defendants' conduct as bad faith and accuse Defendants of stringing them along until the time for Plaintiffs to respond to the Request to Produce had expired. (Id., p. 5-6.)

On July 8, 2013, Plaintiffs filed their motion for a protective order in which they ask the Court to require Defendants to sign the confidentiality agreement, excuse the production of financial information by Plaintiffs, or delay the production of that information until Defendants' counterclaims have survived a motion for summary judgment.  (Doc. 39.)  In their response, Defendants accuse Plaintiffs of failing to comply with Rule 34(b)(2)(B) FED.R.CIV.P., engaging in delay tactics, and failing to

sustain Plaintiffs' burden to obtain the entry of a protective order.  (Doc. 42.)

II. Discussion

Defendants agreed on May 1, 2013 that Plaintiffs would have thirty additional days to respond to the Request to Produce.  Therefore, Plaintiffs' May 31, 2013 response was timely.

The documents Plaintiffs have produced are not organized by category to correspond with Defendants' requests in violation of Rule 34(b)(2)(E) FED.R.CIV.P. Plaintiffs assurance that they will correct this error once the issue of confidentiality is resolved does not excuse their failure to comply with the Rule in the first place.

Federal Rule of Civil Procedure 34(b)(2)(B) provides that a party who objects to a request must state its objections and include the reasons for the objections. Plaintiffs' general objections to the Request to Produce are of the boilerplate, one size fits all variety which have been rejected by this and other courts. Chambers v. Sygma Network, Inc., 6:12-cv-1802-Orl-37TBS, 2013 WL 1775046 * 3 (M.D.Fla.); Mendez v. Land Investors, Corp., 2:12-cv-158-FtM-29SPC, 2012 WL 6012906 * 1 (M.D.Fla.); Arthrex, Inc. v. Parcus Medical, LLC, 2:11-cv-694-FtM-29SPC, 2012 WL 5382050 * 3 (M.D.Fla.); Pepperwood of Naples Condo Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co., 2:10-cv-753-FtM-36SPC, 2011 WL 3841557 * 3 (M.D.Fla.);  FDIC v. Brudnicki, 2013 WL 2948098 FN. 4 (N.D.Fla.); Ochoa v.  Empresas ICA, S.A.B., 2012 WL 3260324 * 4 (S.D.Fla.); Robinson v. City of Arkansas City, Kan., 2012 WL 603576 * 6 (D.Kan.); Williams v. Taser Intern., Inc., 2007 WL 1630875 FN. 3 (N.D.Ga.); Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court, 408 F.3d 1142, 1149 (9th Cir. 2005); Russell

v. Daiichi-Sankyo, Inc., 2012 WL 1161435 * 1-2 (D.Mont.).

Plaintiffs have failed to support their objections with evidence or analysis and while they generally assert privilege, they have failed to submit a privilege log.  Their objections make no sense inasmuch as they first object and then say they will produce documents.  The litany of blanket, non-specific and conclusory objections Plaintiffs have interposed fail to raise valid objections and only serve to waste the time of counsel and the Court.  The Court deems Plaintiffs' general objections a nullity and they will not be considered.  Plaintiffs' remaining objections to all of Defendants' requests with the exception of number 19 are OVERRULED because they are too general to show why the requests for production are objectionable.  Plaintiffs shall comply with all requests contained in the Request to Produce with the exception of number 19 within seven days from the rendition of this Order.  Plaintiffs' objection to request number 19, based upon the use of an incorrect name in the request is SUSTAINED.

This brings the Court to the issue of confidentiality.  It is commonly understood that when an attorney is engaged for purposes of litigation, the attorney has apparent or implied authority to enter into stipulations and agreements concerning some aspects of the litigation.  Typically, these stipulations and agreements concern discovery matters.  So for example, it was presumed that Defendants' lawyer had the necessary authority when he agreed, appropriately, that Plaintiffs would have an additional thirty days to respond to the Request to Produce.  It is also understood that the attorney does not have apparent or implied authority to settle the case, relinquish

his client's substantial rights, or bind his client to new liabilities or burdens, without the client's authorization.  Applying this standard, Defendants' lawyer arguably had authority to commit his clients to the making of a confidentiality agreement.

But here, the argument that Defendants' lawyer had authority is stronger. Local Rule 3.05(c)(2)(C)(iii) provides that in Track Two cases, counsel shall meet in person and prepare a CMR which includes a discovery plan.  In their discovery plan, the parties are expected to address the handling of confidential information.  Id. Counsel and their clients knew in advance of the Case Management Conference what matters would be discussed and counsel who participated in the conference were expected to have the authority to negotiate and agree upon the contents of the CMR, including on issues of confidentiality.  When counsel met it appeared (or so Defendants' lawyer thought), that entering into a confidentiality agreement would further all of the parties' interests.  Counsel represented to the Court that they were going to enter into a confidentiality agreement.  Defendants' lawyer provided the form of the agreement, and told Plaintiffs counsel discovery could be postponed until the agreement was in place.  The confidentiality agreement prepared by Defendants' lawyer is not an admission against Defendants' interests.  Defendants do not contend that signing the confidentiality agreement will cause them to relinquish any substantial rights.  And, Defendants have not argued that the confidentiality agreement requires them to assume any new liabilities or burdens.  Under the circumstances, Plaintiffs and their attorneys justifiably assumed, and the Court finds, that Defendants' lawyer had apparent or implied authority to bind his clients to the making of a confidentiality

agreement.

Federal Rule of Civil Procedure 26(c)(1) provides in part that, "a party . . . may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, . . ."  Thus, good cause is the standard the Court employs in deciding whether to issue a protective order.  To establish good cause, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  U & I Corporation v. Advanced Medical Design, Inc., 251 F.R.D. 667, 673 (M.D.Fla. 2008) quoting United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978). Although Defendants have agreed to enter into a confidentiality agreement, they have also made clear that they will not sign any such agreement.  This circumstance constitutes good cause for the entry of a protective order to give the parties the benefit of the protections they have already agreed to.

Counsel for all the parties have approved the form and content of the confidentiality agreement prepared by Defendants' lawyer.  The Court has read the agreement and finds that with minor modifications, it is appropriate.  Therefore, Plaintiffs' motion for a protective order is GRANTED as follows:

(1)  In connection with this lawsuit, any party may designate as "Confidential" any information that the party in good faith believes involves a trade secret or other confidential or proprietary information (the "Confidential Information").

(2)  Documents produced containing Confidential Information shall be

designated Confidential by marking each such document "Confidential" or other similar language.  Multiple page documents may be designated confidential by marking the first page "Confidential."

(3)  Confidential Information may be disclosed only to "Qualified Persons" as defined below and used by Qualified Persons only in connection with this lawsuit and for no other purpose. All Qualified Persons receiving Confidential Information shall be bound by the terms of this Order and shall use such Confidential Information only in connection with the prosecution and defense of this lawsuit and for no other purpose.

(4)  The term "Qualified Persons" means:

a.  the parties to this lawsuit and those officers, directors, partners, employees and managing agents of the parties who are involved in the conduct of this lawsuit;

b.  the parties' attorneys of record and in-house attorneys employed by the parties (including said attorneys' support personnel);

c.  the Court or any other court having jurisdiction over discovery procedures in this lawsuit, including court personnel, jurors and alternate jurors;

d.  stenographic reporters engaged in such proceedings as are incident to the preparation for trial or trial of this lawsuit or any appeals;

e.  deponents and fact witnesses called to testify or to give opinions in this lawsuit;

f.  any independent experts or consultants used, retained or sought to be retained by counsel of record in this lawsuit; and

-10-

g.  persons solely engaged in scanning or photocopying documents for use in this lawsuit.

(5)  Before Confidential Information may be disclosed to any individual described in paragraph (4)(e), (f) or (g) above, he or she shall have first read this Order and shall sign a certificate (the "Certificate") indicating his or her agreement to comply with the terms of this Order.  Such Certificate shall be retained by counsel for the party disclosing the Confidential Information to said individuals and shall be provided to any other party upon request.

(6)  All Qualified Persons who have received Confidential Information pursuant to this Order shall safeguard such information so as to avoid its disclosure to persons who are not Qualified Persons.

(7)  A party may produce for inspection documents or things containing Confidential Information which are not marked or designated in accordance with paragraph (2) above, and prior to supplying copies of documents and things requested by the inspecting party, may mark or designate such copies as containing Confidential Information in accordance with paragraph (2).

(8)  Production of documents and things for the purpose of inspection and copying shall not constitute a waiver of confidentiality or privilege or other grounds of immunity from discovery as to any other document, thing or information.

(9)  Deposition testimony may be designated as Confidential Information either: (i) at the deposition, by making a statement for inclusion in the deposition transcript stating where the Confidential Information begins and ends, or (ii) on or before thirty

(30) calendar days after receipt of the transcript, by marking a stamp or notice on the transcript of the deposition and informing all counsel in writing of such designation and identifying, by page and line number, where the Confidential Information begins and ends. Until the expiration of such thirty (30) day period with respect to any deposition transcript, all deposition testimony and transcripts shall be deemed to be Confidential Information and treated as if so designated, unless otherwise agreed in writing.

(10)  When Confidential Information is designated in a deposition transcript, the party making the designation should instruct the reporter to make the following notations: (i) on the first page of the transcript, "This transcript contains Confidential Information;" and (ii) on each page containing Confidential Information "Confidential· to be Filed Under Seal" or make alternate arrangements agreed to by counsel.  The reporter shall be instructed to segregate all pages which contain Confidential Information and place such pages in a sealed envelope which shall be attached to the transcript.

(11)  Any party to this lawsuit to whom Confidential Information is produced or disclosed may object to the designation of information as Confidential Information. The objection shall be made in writing to counsel for the designating party.  Counsel shall confer in good faith in an effort to resolve any dispute concerning such designation.  If the objection cannot be resolved by agreement within fourteen (14) calendar days of the date of service of the objection, the designating party shall promptly move the Court to resolve the objection.  All materials whose designation is

-12-

objected to shall continue to be treated as Confidential Information unless and until the Court rules to the contrary.  If the Court determines that the materials have not been designated Confidential in good faith, the Court may award the non·designating party attorney's fees incurred to obtain the de·designation of the materials.

(12)  No party is permitted to file a document under seal with the Court without first having obtained an order granting leave to file under seal.

(13)  If the Court authorizes the filing of anything under seal, it shall be placed in a sealed envelope or other appropriately sealed container on which shall be endorsed: (a) the word "Sealed;" and (b) a statement that the contents have been sealed by the Court and are not to be disclosed, other than to the Court, without Court order.

(14)  All Confidential Information and all copies thereof shall be returned to counsel for the producing party or destroyed within thirty (30) days after final disposition of this lawsuit, including appeals.  If Confidential Information is destroyed under the terms of this paragraph, the receiving party shall confirm that fact to the producing party in writing.  If any Confidential Information is furnished to any expert or to any other person, the attorneys for the party retaining such expert or furnishing such Confidential Information shall make all reasonable efforts to insure that all Confidential Information is destroyed or returned to counsel for the producing party.

The parties have requested sanctions in connection with these motions. Federal Rule of Civil Procedure 37(a)(5) provides for the award of reasonable

expenses, including attorney's fees, except in three limited circumstances. The Court

has considered the award of attorney's fees to each party in connection with those

parts of the motions upon which they prevailed.  The end result would in all

probability, be a wash.  Accordingly, pursuant to Rule 37(a)(5)(iii) the Court will not

impose sanctions against any party in connection with these motions.

IT IS SO ORDERED.

DONE AND ORDERED in Orlando, Florida, on July 25, 2013.

THOMAS B. SMITH
United States Magistrate Judge


Copies to all Counsel